BETHEA *v.* TAYLOR.

1. In an action for the negligence of defendant, it may be shewn in defence, that the injury was the result of negligence, also, on the part of plaintiff.

2. The slave of A. secretly rode his master's horse to the quarter of B.; the horse, getting loose, and straying into the field of B., where he had set a spring-gun, to shoot bears, was killed by the gun: A. cannot maintain an action against B. for the injury, although the field was not enclosed by a lawful fence.

In the Circuit court for Wilcox county, Taylor brought an action of trespass on the case, against Bethea, to recover the value of a horse, alleged to have been shot, through the negligence of the defendant below. It appears, from the bill of exceptions, taken at the trial, which came on at May Term, 1828, of said court, " that evidence was offered, that the defendant told the plaintiff, his (defendant's) negroes had informed him (defendant,) that the plaintiff's horse had been shot, by a gun, set, at night, by the defendant's negroes, and by his directions, within his enclosure, for the purpose of killing bears" —" that the plaintiff's negro had rode the horse to the defendant's quarter, without the plaintiff's knowledge or consent,

and that he was tied, by said negro, within the enclosure of the defendant, from which the horse got loose, and strayed a quarter of a mile, to the place where the gun was set, and where he was shot." It was in proof, that the gun was set sixty yards within the defendant's enclosure, in a retired place; and that the fence was only two or three feet high." It was also proved, " that plaintiff stated, he did not blame defendant, but his own negro, who rode the horse."

*JAN'Y 1831*

Bethea
v.
Taylor.

On this evidence, the court charged the jury, " that whether the negro rode the horse to the defendant's plantation, with or without his master's consent, yet, if the destruction of the horse, was not a necessary consequence of his being taken there, and he was injured or destroyed, in the manner stated by the testimony, and they considered the loss as a consequence of the defendant's negligence, then the defendant was liable." To this charge the defendant excepted, and here assigns it as error.

Gordon, for the plaintiff in error.

Hall & Parsons, for the defendant in error.

By JUDGE CRENSHAW. In this court, the plaintiff in error contends, that the setting of the gun within his enclosure, for the purpose expressed in the bill of exceptions, was a lawful act, and did not amount to culpable negligence on his part; and that, if he was blamable in this, yet the act of the negro, in bringing and tying the horse within the defendant's enclosure, if not unlawful, was a negligence, equally culpable; and that, the injury being the result of the concurrent negligence of both parties, the defendant cannot be made liable.

If the first branch of this proposition be true—if the defendant did no more than what he might lawfully do—then, it is evident, that he cannot be liable for the plaintiff's loss.— But I hold, that if not unlawful, it was, at least, a negligent act of the defendant, to set his gun within his enclosure, around which the fence was only two or three feet high, and into which the cattle, and other stock of his neighbors, running at large, in the woods, might lawfully enter at pleasure. If his fence had been lawful, he would then be blameless.

The second branch of the proposition involves the inquiry, whether the plaintiff was or was not, either by himself or his servants, guilty of negligence, and without which, in all probability, the injury would not have happened. In all proba-

JAN'Y 1831

Bethea
v.
Taylor.

bility, if the negro had not carried the horse, and tied him within the defendant's enclosure, he would not have been shot. Neither law nor policy, will permit a slave, in the night, and without his master's knowledge or consent, to ride his horse to a negro quarter, where there is no overseer, and where the owner resides at some distance. It may be the misfortune of the master to own such a slave; but the master is not entirely blameless, in suffering his slave to depart so far from the ordinary rules of obedience, as secretly to take away his property, at night, and subject it to the hazard of destruction.    It was an unlawful trespass, in the negro, to ride the horse into the defendant's enclosure, and to visit his negro quarter, without permission.    It was the duty of the master, to have kept his horse and his negro at home; and, under the circumstances, the defendant was not bound to use even ordinary precaution: and, if the horse was injured, or destroyed, it must be imputed, as much to the negligence of the plaintiff, and the improper conduct of his slave, as to that of the defendant.    And, if so, the defendant was not liable, and the charge was erroneous.

To this effect, is the law, as stated in the case of *Butterfield* v. *Forrester;*[a] which was an action, for obstructing the highway, by means of which, the plaintiff, who was riding along the road, was thrown down with his horse, and injured.    It was held, the action could not be maintained, because the plaintiff rode with violence, and without ordinary care.    In that case, Lord Ellenborough expressly says, " that a party is not to cast himself upon an obstruction, which has been made by the fault of another, and avail himself of it, if he do not, himself, use common and ordinary caution to be in the right.    That one person being in fault, will not dispense with another's using ordinary care for himself.    That two things must concur, to support this action: an obstruction in the road, by the fault of the defendant, and no want of ordinary care, to avoid it, on the part of the plaintiff."

*all East,*
*60.*

To the same effect is the law cited,[b] where it is said, that "if the immediate and proximate cause of damage, be the unskilfulness of the plaintiff, he cannot recover.    In that case, some brick-layers, employed by the defendant, had laid a heap of lime-rubbish before the defendant's door; the plaintiff was passing, in a single-horse chaise—the wind suddenly blew the lime-rubbish, so as to frighten the horse; he started on one side, and would have run against a wagon, but the plaintiff hastily pulled him around, and the horse ran over a lime-heap, lying before another man's door, which broke the shaft—the

*l2Wheat's*
*Sel. 852.*

horse ran away, and hurt the plaintiff.    It was held, that the
immediate and proximate cause of the injury, was the unskil-
fulness of the driver, and that, therefore, the action could not
be maintained.

The principle settled in these cases, is the same involved in
the one under consideration.    The injury may be imputed as
much to the negligence of the plaintiff, as of the defendant;
and, if so, the defendant was not liable, and so should the
law have been stated to the jury.    The court are of opinion,
that the judgment should be reversed, and the cause remanded.

JUDGE PERRY dissenting.

Reversed and remanded.

JUDGE SAFFOLD not sitting.